UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

_____
                                                        )
Father Doe, Mother Doe, and John Doe    )
      Plaintiffs,                                     )
                                                        )
vs.                                                     )          Case Number: 1:22-cv-00194-JL
                                                        )
West Alton Marina, LLC, et als.              )
      Defendants.                                    )
_____)


## **MOTION TO PROCEED UNDER PSEUDONYM**

      NOW COME the plaintiffs, Father Doe, Mother Doe, and John Doe, by and through their

attorneys Sherman Law, PLLC, and request an Order from this Court Allowing them To Proceed

Under Pseudonym and in support of which states as follows:

      1.      The plaintiff was a ***minor*** who was sexually assaulted and harassed while working

for the defendant West Alton Marina.  He was a minor at the time this matter was originally filed

in the Belknap Superior Court which is why the caption refers to Father Doe and Mother Doe.

He has now reached the age of majority.[1]

      2.      The plaintiffs bring claims against the manager who assaulted John Doe, his

former employer, and its owners who worked at the business and who, upon information and

belief, were co-workers and/or employees.

      3.      Belknap Superior Court granted a Motion Allowing the Plaintiffs to Proceed

Under a Pseudonym.

      4.      Now that the case has been removed, the plaintiffs seek the same Order from this

Court to prevent further trauma, embarrassment, and emotional harm.

---

[1] A separate motion to amend caption will be filed.

5.     This Court recently addressed its standard of review for granting a Motion to Proceed Under Pseudonym.  See Doe v. Town of Lisbon, Dkt. No. 1:21-cv-944-JL (June 23, 2022, Slip Op. 2022 DNH 075)(Copy of Order attached as Exhibit 1).

6.     This Court cited 28 U.S.C. § 1450 identifying that "all injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

7.      The Court further recognized, however, that the case of Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 437 (1974) holds that "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."

8.     In Doe v. Town of Lisbon, this Court identified that it considers the following six (6) Megless factors when addressing if a plaintiff can proceed under a pseudonym:

(1)     the extent to which the identity of the litigant has been kept confidential;
(2)     the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;
(3)     the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;
(4)     whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;
(5)     the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and
(6)     whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

9.     New Hampshire law strongly favors protection of minors as recognized by its many statutes making, for example, legal proceedings involving sexual abuse and neglect non-public.  See e.g., generally RSA 169-C Child Protection Act; see also RSA 169-C: 3, XXVII-a defining "sexual abuse" as meaning "the employment, use, . . . or coercion of any child in

2

sexually explicit conduct . . . or the rape, molestation, prostitution, or other form of sexual exploitation of children"); and RSA 169-C:14 (excluding the public from hearings involving sexual abuse and neglect of minors); and RSA 169-C:25 (making court records of proceedings confidential and maintained separately from "all other court records" such that they are "withheld from public inspection")

10.     Courts in other jurisdictions have recognized the strong public policy in favor of allowing plaintiffs alleging sexual assault to proceed with claims under a pseudonym. Doe v. Trishul Consultancy, LLC, No. 18-16468, 2019 WL 4750078, at 5 (D.N.J. Sept. 30, 2019)(holding that disclosure of a victim of sexual assault's identity carried a concrete risk of *severe emotional harm and revictimization*)(emphasis added); see also Doe v. Cabrera, 307 F.R.D. 1, 5 (D.D.C. 2014) ("Courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects."); Doe v De Amigos, LLC , No. 11-1755, 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) ("The Court agrees with plaintiff that the information about the sexual assault at issue in this case is a matter of a sensitive and highly personal nature in which she seeks to preserve a legitimate privacy interest.").

11.     Courts also have recognized that the "the fact that [a plaintiff] was a *minor* at all times material to the allegations of rape and sexual assault is greatly significant" in analyzing whether a plaintiff may proceed under a pseudonym. L.M. v. City of Gardner, No. 19-2425-DDC (D. Kan. 9/3/2019 Magistrate Judge O'Hara)(granting Motion to Proceed Under Pseudonym because "Courts granted heightened protection to child victims and have concluded that complaints involving minors are matters of highly sensitive and personal nature.")(Copy of Order attached as Exhibit 2).

12.     Allowing a victim of sexual assault, particularly a minor, to proceed under a pseudonym promotes the public policy of ensuring that victims may vindicate their rights.  Doe v. Evans, 202 F.R.D. 173, 176 (E.D. Pa. 2001)("the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights, especially where law enforcement officers are involved.").

13.     If the Court were to rule otherwise, there would be a great chilling effect on sexual assault claims—particularly those involving minors—because it would discourage minor victims from pursuing their claims.  Doe v. Rutgers, 2019 WL 1967021, at *3 (D.N.J. Apr. 30, 2019) (recognizing a "public interest in ensuring that victims of sexual assault can vindicate their claims and that the fear of public humiliation does not discourage these plaintiffs.").

14.     This would be contrary to what is clearly the underlying societal public policy of promoting victims of sexual assault reporting the harm to which they have been subjected.  Doe No. 2 v. Kolko, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (The "public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.").

15.     Here, as identified in the Complaint, John Doe was a minor when he was sexually assaulted and harassed while working at West Alton Marina.  The plaintiff alleges to have suffered severe emotional distress and physical injury.

16.     John Doe's name and personal identifiers have remained confidential.

17.     John Doe's name, however, has been revealed to each defendant so that each can file responsive pleadings.  This was specifically pursuant to (a) the existing Superior Court Order allowing the plaintiff to proceed under pseudonym, and (b) with counsel's agreement to maintain the information as confidential subject only to disclosure to attorneys and parties.

18.     Now that the matter has been removed, but the defendants have the plaintiff's personal identifier, there is no compelling reason why the defendants need to publicly name John Doe.  Indeed, given that the conduct giving rise to the claims occurred when the plaintiff was a minor, it should remain confidential.  Just the revelation of the name, would further traumatize John Doe as it forever would be emblazoned across the public domain.

19.     Granting this motion, therefore, is in the public interest as it will (a) protect the privacy of an individual sexually assaulted as a minor, (b) not further subject John Doe – a minor at the time of the alleged sexual assault and abuse – to further harm, (c) promote the important public policy of encouraging, rather than dissuading, victims of sexual assault from coming forward, and (d) not prejudice the defendants.

### *Assent/Non-Assent*

20.     Counsel for defendant Murray, Attorney Melone, does ***not*** assent to this Motion.

21.     Counsel for defendant West Alton Marina and Brian Fortier, Attorney Christie, does ***not*** assent to this Motion.

22.     Counsel for Deirdre Tibbetts, Attorney Sakellarios, does ***not*** assent to this Motion.

23.     Counsel for Allyson Shea, Attorney Eck, advised that Ms. Shea takes no position regarding this Motion while reserving the right to assert a position in the future.

24.     No memorandum of law accompanies this Motion.

WHEREFORE, the plaintiffs request an Order:

A.  Granting this Motion permitting the plaintiffs to proceed under a pseudonym in order

to maintain John Doe's privacy,

B.  Scheduling this matter for a hearing if the Court deems it necessary; and

C.  Granting such other and further relief as the Court deems just and equitable.

Respectfully submitted

FATHER DOE, MOTHER DOE AND JOHN DOE

By and through their attorneys,

Date:  06/29/2022          /s/ John P. Sherman
                           John P. Sherman, Esq.
                           Bar No. 12536
                           Sherman Law PLLC
                           111 Bow Street, Unit #2
                           Portsmouth, NH 03801
                           (603) 570-4837
                           jsherman@johnshermanlaw.com

## CERTIFICATE OF SERVICE

This is to certify that counsel for each defendant has received a copy of this filing through the Court's ECF system.

Date:  6/29/2022          /s/ John P. Sherman

EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John Doe

   v.         Civil No. 1:21-cv-944-JL
               Opinion No. 2022 DNH 075

Town of Lisbon, et al.

**MEMORANDUM ORDER**

   The court has before it proposed intervenor, UCLA School of Law Professor Eugene

Volokh's, motion to intervene[1] and motion to unseal and oppose pseudonymity.[2]  Professor

Volokh opposes the plaintiff's continued pseudonymity because he would like to more

effectively write about the case in his academic work and on his blog, "The Volokh

Conspiracy."[3]  Plaintiff John Doe objects to both motions, while the defendants did not respond

to, and thus take no position on, the motions.  After considering the written submissions and

hearing oral argument, the court grants Professor Volokh's motion to intervene and denies his

motion to unseal and oppose pseudonymity.

I.  **Background**

   Through this lawsuit, the plaintiff – a former police officer for the Town of Lisbon –

seeks removal from New Hampshire's "Exculpatory Evidence Schedule."  Broadly speaking, the

EES is "a list of police officers who have engaged in misconduct reflecting negatively on their

credibility or trustworthiness."  New Hampshire Ctr. for Pub. Int. Journalism v. New Hampshire

---

[1] Doc. no. 26.

[2] Doc. no. 27.

[3] See https://reason.com/volokh/ (last accessed June 20, 2022).

Dep't of Just., 173 N.H. 648, 651 (2020).[4]  The New Hampshire Department of Justice maintains the EES and, subject to the provisions of a recently enacted New Hampshire statute (RSA 105:13-d, effective Sept. 24, 2021), the EES "shall be a public record" under New Hampshire's right-to-know laws.  The NHDOJ publishes the EES on its website.[5]  If an officer files a timely challenge to his or her placement on the EES, however, the officer's name and corresponding information will be non-public and not subject to disclosure under the right-to-know law until the challenge is complete and all appeals are exhausted.  If the officer's challenge is successful, his or her name and corresponding information will remain non-public.  See generally RSA 105:13-d.  As a result, on the current EES, officers with pending challenges have their names and corresponding information (such as the reporting police department, date of incident, date of notification, and category of infraction), as well as their case information, redacted.  If the officer loses his challenge to placement on the EES, his name and corresponding information are made public.  It is unclear from the statute, the parties' submissions, and other publicly available information whether the NHDOJ maintains an unredacted version of the EES (including the names and information of officers with pending challenges) and if so, who has access to it within the agency.

The plaintiff initially sued the Town in New Hampshire Superior Court, but after the Town timely and properly removed the case to this court, the plaintiff amended his complaint to

---

[4] The EES is often still referred to as the "Laurie List," since it is derived from State v. Laurie, 139 N.H. 325 (1995).

[5] See Exculpatory Evidence Schedule, available at https://www.doj.nh.gov/exculpatory-evidence-schedule/index.htm (last accessed June 15, 2022).

add the NHDOJ as a defendant.[6]  The plaintiff contends that the Town lacked a factual basis to place him on the EES, violated his procedural and substantive due process rights when investigating the underlying conduct that led to his placement on the EES, and, even if the factual findings that led to his placement on the EES were sustained, his alleged behavior was not potentially exculpatory and did not justify placement on the EES.

Following the NHDOJ's motion to dismiss, the plaintiff's motion for voluntary dismissal, a potential consolidation order, and oral argument on these preliminary motions and issues, the parties filed a stipulation addressing how they wished to proceed.[7]  The court approved the stipulation, effectuating remand of all claims against the NHDOJ and certain claims for injunctive relief against the Town, as well as consolidation with the plaintiff's related case.[8]

After remand, the following claims for damages against the Town remain before this court:  (1) violation of the plaintiff's procedural due process rights under the United States Constitution and New Hampshire Constitution; (2) violation of his substantive due process rights under both constitutions; and (3) "libel, slander, and damage to reputation" and an award of attorneys' fees.[9]

---

[6] See Notice of Removal (doc. no. 1) and State Court Complaint (doc. no. 1-2); First Amended Complaint (doc. no. 6).  After the NHDOJ moved to dismiss, the plaintiff filed a related case in state court, this time naming both the Town and NHDOJ as defendants.  The Town again removed that case to this court.  See D.N.H. Docket No. 22-cv-43-SM.

[7] Doc. no. 25.

[8] See Consolidation Order (doc. no. 28); Endorsed Order of April 20, 2022; Remand Order (doc. no. 31).

[9] Consolidated Complaint (doc. no. 29-1), at 9-10.  The aspects of the procedural and substantive due process claims seeking injunctive relief against the Town and NHDOJ have been remanded to state court by agreement of the parties.

The parties agreed to allow the plaintiff to proceed pseudonymously, both in state court and in this court.  While Grafton County Superior Court Judge MacLeod granted the plaintiff's motion to seal the docket and all pleadings in the state court matter, the state court record is not sealed on this court's docket.  See doc. no. 8 (certified copy of state court record from state case no. 215-2021-cv-00252).  Nor is this court's docket or any of the operative pleadings sealed. The only document that is currently sealed is a prior version of a complaint that inadvertently included the plaintiff's last name on one page.  See doc. no. 1-2.

## II.   <u>Analysis</u>

The court addresses Professor Volokh's motions in turn, beginning with his request to intervene.

### A.   **Permissive intervention**

Professor Volokh moves to intervene "for the limited purpose of moving to unseal the state court record and moving to oppose pseudonymity."[10]  Permissive intervention "is an effective mechanism for third-party claims of access to information generated through judicial proceedings."  Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 783 (1st Cir. 1988); see also R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 11 (1st Cir. 2009) (noting that "permissive intervention is the procedurally correct vehicle" for a third-party to challenge a sealing order or oppose pseudonymity).  The court has broad discretion to allow "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).

---

[10] Doc. no. 26-1; Doc. no. 34.

When, however, "the party moving to intervene does so for a limited purpose and does not seek to become a party to the litigation, the nexus-of-fact-or-law requirement is loosened, and '[s]pecificity, e.g., that the intervenors' claim involve the same legal theory that was raised in the main action, is not required.'" Does 1-6 v. Mills, No. 1:21-CV-00242-JDL, 2021 WL 6197377, at *1 (D. Me. Dec. 30, 2021) (Levy, J.) (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (3d Cir. 1994) (alterations omitted)).  For example, where, as here, "a party seeks to intervene in a case for the limited purpose of unsealing judicial records, most circuits have found that 'there is no reason to require such a strong nexus of fact or law.'" Does 1-6, 2021 WL 6197377, at *1 (quoting Flynt v. Lombardi, 782 F.3d 963, 967 (8th Cir. 2015)).  The court also "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 40 (1st Cir. 2020) (quoting Fed. R. Civ. P. 24(b)(3)), as well as "whether the 'putative intervenor's interest is adequately represented by an existing party.'" Massachusetts v. U.S. Dep't of Health & Hum. Servs., 289 F. Supp. 3d 259, 265 (D. Mass. 2018) (quoting KG Urban Enters., LLC v. Patrick, 293 F.R.D. 42, 49 (D. Mass. 2013)).

Professor Volokh has standing to intervene and seeks intervention for a limited, permissible purpose.  Allowing him to intervene will not require adding claims, defenses, parties, or new pleadings.  See Fed R. Civ. P. 24(c).  His request is timely and comes in the preliminary stages of the case.  Thus, it will not delay the adjudication of the underlying claims.  Moreover, the existing parties will not adequately represent Professor Volokh's interests because the

plaintiff opposes his request to unseal and the defendants take no position on the request.  The court therefore grants Professor Volokh's motion to intervene.[11]

### B.      Pseudonymity

Having granted Professor Volokh's motion for limited intervention, the court turns to his motion to unseal and oppose pseudonymity.  Because, as noted above, the sealed records in this case are limited to one document, the heart of Professor Volokh's request is his opposition to pseudonymity.  Professor Volokh opposes continued pseudonymous litigation based on the presumption of open court records and his common law and First Amendment rights of access to court records.

The parties appear to have agreed at the state court level to let the plaintiff proceed pseudonymously and continued that agreement once the case was removed to this court.  As Professor Volokh correctly points out, however, this court is not bound by state court orders when ruling on a procedural motion governed by federal law, and it may dissolve or modify such state court orders.  See Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 437 (1974) (explaining that "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal"); 28 U.S.C. § 1450

---

[11] Plaintiff effectively concedes that Professor Volokh satisfies the requirements of Rule 24(b), but argues that the court should deny intervention because Professor Volokh "cannot ultimately receive any relief."  Obj. to Mot. to Intervene (doc. no. 32) at 2 (citing Turner v. Cincinnati Ins. Co., 9 F.4th 300, 317 (5th Cir. 2021)).  In Turner, however, the district court denied a third party's motion to intervene because there was "no relief for [him] to seek," not receive.  Turner, 9 F.4th at 317 (emphasis added).  That was more akin to a denial based on lack of standing to intervene.  Here, however, Professor Volokh plainly has standing to move to unseal court records and oppose pseudonymity.  And even if the court ultimately denies Professor Volokh's motion to unseal, that is not a valid basis to deny intervention because he may wish to re-assert his challenge to sealing and pseudonymity at a later stage in the case and will need to maintain intervenor status to seek that relief.

("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.").  Accordingly, the state court sealing order does not control here and the court independently analyzes whether the plaintiff should be allowed to continue pseudonymously.

Federal cases must ordinarily proceed in the names of the parties.  See Fed. R. Civ. P. 10(a) & 17(a)(1).  The Federal Rules of Civil Procedure do not provide a means for proceeding anonymously or through a pseudonym.  See Doe v. Trs. of Dartmouth Coll., No. 18-cv-040-LM, 2018 WL 2048385, at *2 (D.N.H. May 2, 2018) (McCafferty, C.J.).  In addition, "[u]nder the common law, there is a long-standing presumption of public access to judicial records."  In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005).  Nevertheless, while "the public's right of access to such materials is vibrant, it is not unfettered.  Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access."  Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998).  To that end, "courts have permitted parties to proceed under a pseudonym and to seal documents that reveal their true identities when extraordinary circumstances justify that restriction."  Doe v. Trs. of Dartmouth Coll., No. 18-CV-690-JD, 2018 WL 5801532, at *1 (D.N.H. Nov. 2, 2018) (DiClerico, J.); see also F.T.C. v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 412 (1st Cir. 1987) (describing test as one requiring a showing of "exceptional circumstances" to "overbear the public's right of access").  The court "must carefully balance the competing interests that are at stake in the particular case" when deciding whether to allow pseudonymous litigation and "enjoys considerable leeway in making decisions of this sort."  Sieldle, 147 F.3d at 10.

The First Circuit Court of Appeals has not adopted a standard for deciding whether to allow pseudonymous litigation.  Judges within this court have recently utilized some

combination of similar factors from the Second and Third Circuit Courts of Appeals.  See Doe, 2018 WL 2048385, at *5 (applying the Third Circuit test); Verogna v. Twitter, Inc., No. 20-CV-536-SM, 2020 WL 5077094, at *2 (D.N.H. Aug. 27, 2020) (McAuliffe, J.) (applying the Third Circuit test at parties' request); Doe, 2018 WL 5801532, at *3 (applying Second Circuit test but referencing Third Circuit factors "when appropriate"); see also Does 1-6 v. Mills, No. 1:21-CV-00242-JDL, 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021) (Levy, C.J.) (using the Third Circuit test). [12]

 The court agrees with Chief Judge McCafferty that the "Third Circuit's test is consistent with the overall aim of the First Circuit's framework for sealing judicial records, insofar as the district court must proceed from the presumption of an open litigation process and may only limit such access in compelling circumstances" and uses that test here.  Doe, 2018 WL 2048385, at *5.  In Doe v. Megless, the Third Circuit endorsed nine factors courts should weigh in deciding this question.  Six factors favoring pseudonymity are:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

Doe v. Megless, 654 F.3d 404, 409 (3d Cir. 2011) (citation omitted).  On the other hand, the factors favoring disclosure are:

> [7] the universal level of public interest in access to the identities of litigants; [8] whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and

---

[12] Both the plaintiff and Professor Volokh cite the Third Circuit factors in their briefing.

[9] whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

Id.

The plaintiff argues that the court need not address the Megless factors because RSA 105:3-d provides him with an unconditional right to anonymity in this case, and Professor Volokh does not challenge the constitutionality of that statute.  Professor Volokh argues that the state statute does not control because "federal law governs motions to seal records in federal court."[13]  Neither side is entirely correct.  The statute is not dispositive of the pseudonymity question, but the court also cannot ignore it.  Instead, the court appropriately considers the statute when weighing the Megless factors.

Two factors – whether the motives of either the pseudonymous plaintiff or party opposing pseudonymity are illegitimate (factors six and nine, as listed above) – are a wash.  Neither side has presented evidence or even suggested that the other's motives are illegitimate.  The court next addresses the remaining factors, beginning with those that traditionally favor pseudonymity.

The first factor – the extent to which the plaintiff's identity has been kept confidential – favors pseudonymity.  The plaintiff has maintained anonymity from the outset of this case and his identifying information is redacted on the publicly available version of the EES, as required by RSA 105:13-d.  Moreover, nothing in the record suggests that the plaintiff's identity, as it relates to his presence on the EES, is otherwise publicly known.

The second factor – the bases upon which disclosure is feared or sought to be avoided – also favors pseudonymity.  While the "mere fact that judicial records may reveal potentially

---

[13] Reply (doc. no. 35) at 2 (quoting Haynes v. Haggerty, No. 19-cv-00164, 2020 WL 2557230, at *5 (D. Vt. May 19, 2020)).

embarrassing information is not in itself sufficient reason to block public access," here the

plaintiff contends that he will suffer more than embarrassment if his identity is disclosed. Siedle,

147 F.3d at 10. Specifically, the plaintiff argues that if he must reveal his identity, he will

experience severe reputational damage and impairment of future career prospects, regardless of

the outcome of the litigation. The plaintiff's concerns are well founded.

"[W]here the injury litigated against would be incurred as a result of the disclosure of the

plaintiff's identity," pseudonymity may be appropriate. Verogna, 2020 WL 5077094, at *2

(quoting Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992)) (emphasis supplied). If the plaintiff

must challenge his placement on the EES in his own name and he ultimately prevails and is

removed from the EES, the public will still know that he was placed on the EES initially. The

public could suspect, or conclude, that he deserved to be on the list, even if he ultimately proves

otherwise. Simply being listed among other dishonest or untrustworthy police officers risks

potential, irreversible harms to a person's career prospects, whether that person wants to work in

law enforcement again (as the plaintiff here does) or in other fields of employment.

Accordingly, as in Doe, the plaintiff has a "reasonable fear that, whatever the outcome of the

action, public identification will subject him to severe reputational harm . . . and will defeat the

very purpose of this litigation." 2018 WL 2048385, at *6.

Professor Volokh argues that allowing pseudonymous litigation here would create an

exception that could swallow the rule of open litigation because this case resembles a "garden-

variety" employment dispute or libel claim. Although Professor Volokh is correct that the

plaintiff asserts a libel claim against his former employer and certain aspects of his other claims

resemble a dispute between employer and former employee, the plaintiff is not so much

challenging his termination as he is his placement on the EES. He also does not seek job

reinstatement, back pay, front pay, or other remedies typically associated with employment cases.  This litigation (both the federal and state court aspects) derives from RSA 105:13-d, a unique New Hampshire statute establishing a process and remedy for challenging placement on the EES.

Indeed, the plaintiff's very reason for bringing this suit is to challenge his placement on the EES and ultimately attain removal therefrom.  The plaintiff's status on the EES therefore makes this an atypical case.  And while the aspect of the plaintiff's claims which seek the equitable remedy of removal from the EES have been remanded to state court, the state court case and this case are operating in tandem.  Thus, the impact of disclosing the plaintiff's identity in this case will be felt just as strongly in the state court case and could have the same damaging consequences the statute was enacted to prevent.

The third factor – the magnitude of the public interest in maintaining the confidentiality of the plaintiff's identity – similarly favors pseudonymity.  This factor asks, "if this litigant is forced to reveal his or her name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated?" Megless, 654 F.3d at 410.  The answer appears to be "yes."  If law enforcement officers know that the statutorily afforded confidentiality can be easily overridden, such that they must litigate cases challenging placement on the EES in their real name, it logically follows that fewer are likely to file such cases and expend resources attempting to clear their names.

In addition, RSA 105:13-d evidences a strong public interest within New Hampshire in maintaining the confidentiality of police officers' identities during pending legal challenges to placement on the EES.  The statute provides that the individual officer's name and "corresponding information on" the EES shall be published to the public, "except for any

individual with a pending legal action regarding the officer's placement on the" EES.  RSA 105:13-d, II(d).  Once the court issues a final order in the case, and the parties exhaust their appellate rights, the officer's name and corresponding information will become public unless the court finds that "the underlying misconduct is not potentially exculpatory" or "that the law enforcement agency erred in recommending that the officer be placed on the" EES.  Id. at II(d)(1) and (2).  The statute also provides that if "the court issues an order finding that an officer did not receive adequate due process and remands the matter back to the law enforcement agency for further due process proceedings, then the officer's name shall not be publicly disclosed until the due process ordered is finally exhausted."  Id. at II(d).  In other words, if the officer prevails, his identity is never disclosed.  Furthermore, the statute provides that nothing therein "shall preclude the court from taking any necessary steps to protect the anonymity of the officer before entry of a final order."  RSA 105:13-d, V.  The statute therefore reflects the public's interest in protecting the anonymity of officers with pending EES challenges, like the plaintiff here.[14]

To hold otherwise and allow disclosure of the plaintiff's identity would render many of the statute's key provisions meaningless.  If any interested third party could intervene in an EES challenge and demand disclosure of the affected officer's name, the anonymity provisions would have no effect and the statute as a whole would be severely weakened.[15]  See Tower v. Leslie-Brown, 167 F. Supp. 2d 399, 405 (D. Me. 2001) ("That the underlying child protective

---

[14] Indeed, as of April 1, 2022, this lawsuit appears to be the only EES challenge pending in Federal Court and the dozens of other pending challenges in state court are "entirely under seal." See https://www.doj.nh.gov/exculpatory-evidence-schedule/documents/20220401-ees-compliance-report.pdf.

[15] Without an anonymous challenge procedure, police department leadership may be incentivized to place disgruntled or whistleblowing officers on the EES for inappropriate or even frivolous reasons because of the damaging reputational effects that result from being publicly named on the list.

proceedings in this case are sealed by state statute counsels in favor of sealing the record in this federal action. Although the statutes closing the state proceedings do not govern this civil rights action in federal court, <u>they do demonstrate a legislative judgment that the State of Maine has an interest in maintaining the confidentiality of child protective proceedings</u>. . . . If the Court were to allow the parties to import confidential documents into federal court and thereby make them public, it would seriously undermine the state's policy.") (emphasis added).  Professor Volokh's interest in learning the plaintiff's real name so he can, in his words, "effectively" research the plaintiff's "past cases or controversies" and gain "important context" about the case[16] therefore does not outweigh the strong public interest in preserving at least temporary anonymity reflected in RSA 105:13-d.

Professor Volokh cites no decisions where a court required disclosure under similar circumstances.  The case he considers the closest to this one – Coe v. U.S. Dist. Ct. for Dist. of Colorado, 676 F.2d 411 (10th Cir. 1982) – is readily distinguishable.  There, the plaintiff moved for an injunction requiring the Colorado Board of Medicine to conduct his disciplinary hearing in secret.  The court denied the motion.  Importantly, Colorado, unlike New Hampshire, had not enacted a directly applicable statutory anonymity provision to protect petitioners.  The court observed that "[n]o licensee has a 'right' to a secret, closed nonpublic hearing before the Board." Id. at 417.  It was instead a "matter within the Board's statutory authority, subject to its sound discretion in the balancing of public and private interests." Id.  Here, by contrast, the statute requires that those challenging placement on the EES are permitted to remain anonymous during their challenge.

---

[16] See doc. no. 27-1 at 1, 5.  Professor Volokh's effective reporting concerns are somewhat alleviated by the fact that the docket and all of the operative pleadings (which detail the underlying dispute) are publicly available.

The fourth factor – whether, because of the legal nature of the issues presented, there is an atypically weak public interest in knowing the litigant's identities – favors disclosure.  This case does not involve "purely" legal issues.  Determining if the plaintiff was justifiably placed on the EES and whether the alleged underlying misconduct was potentially exculpatory will require factfinding.

The fifth factor – whether "the litigant [will] sacrifice a potentially valid claim simply to preserve [his] anonymity," Megless, 654 F.3d at 410 – favors pseudonymity.  Plaintiff's counsel indicated at oral argument that his client likely would not prosecute this lawsuit in this court if he must do so in his own name.  This factor accordingly weighs in the plaintiff's favor.

The final two factors favor disclosure, but do not overcome the countervailing factors discussed above.  The seventh – the universal level of public interest in access to the identities of litigants – is self-evident and supports public disclosure of court records, including litigants' true names.  The eighth – whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained – also supports disclosure, but not as strongly as Professor Volokh contends.  While the court agrees that there is a strong interest in holding public officials like police officers accountable, this is not a suit to hold the plaintiff accountable.  The plaintiff has already been held accountable; Lisbon PD terminated him and placed him on the EES.  Also, if his challenge fails, he will remain on the EES and the public will learn his identity, resulting in further public accountability.  If anything, in an EES challenge, the plaintiff is seeking to hold his former department accountable for potentially placing him on the EES without justification.  Contrast that to a § 1983 suit where a citizen seeks to hold a police officer accountable for some unconstitutional conduct.  In such a

suit, unlike here, the interest in publicly identifying the officer-defendant is especially strong.

See Pearson v. Callahan, 555 U.S. 223, 231 (2009) (noting that federal civil rights litigation

advances the "important" interest of "need[ing] to hold public officials accountable when they

exercise power irresponsibly").

The balance of factors thus weighs in favor of allowing the plaintiff to continue

proceeding under a pseudonym.  The above-described considerations – in particular, the

plaintiff's reasonable concern that he will be subjected to severe reputational damage absent

anonymity, regardless of the outcome of this litigation, and the strong public interest (as reflected

in RSA 105:13-d) that officers challenging placement on the EES should be allowed to maintain

their anonymity during such challenges – outweigh the interests favoring public identification

and the presumption of open court proceedings.

This ruling is without prejudice to Professor Volokh, any other party, or the court

revisiting the propriety of pseudonymous litigation at a later stage in the litigation.  See Does I

thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1069 (9th Cir. 2000) (court should

evaluate use of pseudonym "at each stage of the proceedings").  The court's order is therefore

"limited to pretrial proceedings."  Doe, 2018 WL 2048385, at *7.

## III.   **Conclusion**

For the reasons set forth above, Professor Volokh's motion to intervene[17] is GRANTED

and his motion to unseal and oppose pseudonymity[18] is DENIED without prejudice.

---

[17] Doc. no. 26.

[18] Doc. no. 27.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: June 23, 2022

cc:     Christopher T. Meier, Esq.
        Naomi N. Butterfield, Esq.
        Samuel H. Martin, Esq.
        Debra Weiss Ford, Esq.

**L.M., AS PARENT AND NEXT FRIEND OF MINOR A.M., Plaintiff,**

**v.**

**CITY OF GARDNER, KANSAS, Defendant.**

**Case No. 19-2425-DDC**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

**September 3, 2019**

<u>**ORDER**</u>

The adult plaintiff in this action filed the complaint under the pseudonym L.M., asserting claims on behalf of his minor daughter, identified as A.M., against the City of Gardner, Kansas ("the City"). Simultaneously, L.M. filed a motion for leave to proceed using a pseudonym (ECF No. 3). Defendant does not oppose the motion. Because the court finds L.M. has demonstrated exceptional circumstances in which the need for his anonymity outweighs the public interest, the motion is granted.

**I. Factual Background**

The following facts come from plaintiff's complaint (ECF No. 1). Plaintiff alleges that during the summer of 2018, when A.M. was 16 years old, A.M. was sexually harassed and abused on an ongoing basis by her superior while working as a seasonal employee for the City. On June 28, 2018, the superior allegedly raped A.M. As a result of the sexual

Page 2

abuse, A.M. has suffered and continues to suffer severe emotional distress including "anxiety, stress, mental anguish, fear, and humiliation."[1]

**II. Legal Standards for Proceeding under a Pseudonym**

Proceeding anonymously is not contemplated by the Federal Rules of Civil Procedure.[2] Rather, Rule 10(a) requires that the title of a complaint "name all the parties," and Rule 17(a) prescribes that "[a]n action must be prosecuted in the name of the real party in interest."[3] These rules recognize the "substantial benefit to maintaining open court proceedings" in which the public knows the identity of litigants.[4] The Tenth Circuit has stated that the public has an "important interest in access to legal proceedings."[5] In addition, without a party's name in the public record, "it is difficult to apply legal principles

Page 3

of res judicata and collateral estoppel."[6] Thus, "[o]rdinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials."[7]

Nonetheless, the Tenth Circuit has recognized that there may be cases in which "exceptional circumstances" warrant permitting a party to proceed anonymously.[8] Adopting the standard of the Eleventh Circuit, the Tenth Circuit has ruled,

> Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. The risk that a plaintiff may suffer some embarrassment is not enough.[9]

When a plaintiff seeks to proceed anonymously, the court must "weigh[] the plaintiff's claimed right to privacy against the countervailing public interest."[10] "A plaintiff should not be permitted to proceed under a pseudonym unless the need for anonymity outweighs the public interest in favor of openness."[11]

Page 4

**III. Analysis**



Plaintiff asserts the highly personal and sensitive nature of this action, in which a minor could be subject to the type of harm litigated against if her father's identity is revealed, outweighs the general public interest in open litigation. The court agrees.

Without minimizing the importance of maintaining open court proceedings, the court determines the specific and unique facts of this case warrant permitting L.M. to continue in this action under his pseudonym. First, the court finds that if the identity of L.M. is publicly revealed, the identity of A.M. will be easily determined. Plaintiff asserts, and the City does not dispute, that the City of Gardner consists of approximately 19,000 residents. L.M. asserts that "[r]equiring L.M. to reveal [his] identity is likely to also reveal A.M.'s identity in their small community" where the incidents occurred.[12] Because of the "inseparable relationship" between A.M. and her parent, "[o]rdering disclosure of the parent's identit[y] would place—in effect—personally identifiable and confidential information about [the alleged sexual assault of A.M., a minor] in the public record."[13]

Second, the fact that A.M. was a minor at all times material to the allegations of rape and sexual assault is greatly significant. The allegations involve matters of a highly sensitive and personal nature, which occurred when A.M. was 16 years old. "Courts grant heightened protection to child victims and have concluded that complaints involving

Page 5

minors are matters of a highly sensitive and personal nature."[14] Judges in this district have consistently found allegations of sexual assault and harassment of minors to be of a nature justifying protecting the identity of the minor.[15]

Third, there is a potential danger of emotional harm to A.M. if her identity becomes publicly known. As previously indicated, the complaint alleges that as a result of the sexual assault, A.M. suffered severe emotional distress

including "anxiety, stress, mental anguish, fear, and humiliation."[16] There is a risk that public disclosure of L.M.'s identity in this case might lead to further severe emotional distress. "Although embarrassment is not enough to overcome the public interest in litigation, the real potential of additional psychological harm—one of the very injuries litigated against—is enough to outweigh the public interest in disclosure."[17]

Page 6

Finally, the court notes defendants would not be prejudiced by L.M. continuing to proceed under his pseudonym in this action because they already know his identity.[18] Nor does the court note any specific benefit to the public from learning L.M.'s identity.[19]

L.M. has demonstrated that this is an exceptional case in which the need for anonymity outweighs the public interest in having access to the identity of A.M.'s parent. The sexual assault of a minor involves matters of a highly sensitive and personal nature. The alleged facts of the case demonstrate risks of future psychological harm and repetition of the injury against which plaintiff is litigating. Accordingly, the court allows L.M. to proceed in this case under his pseudonym.

IT IS SO ORDERED.

Dated September 3, 2019, at Kansas City, Kansas.

s/            James            P.            O'Hara
James                    P.                    O'Hara
U.S. Magistrate Judge

--------

Footnotes:

[1]. ECF No. 1 at 7.

[2]. *See Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) ("Proceeding under a pseudonym in federal court is, by all accounts, 'an unusual procedure.'" (quoting *M.M. v. Zavaras*, 139 F.3d 798, 800 (10th Cir. 1998)); *Doe v. USD*



*No. 237, Smith Ctr. Sch. Dist.*, No. 16-2801, 2017 WL 3839416, at *10 (D. Kan. Sept. 1, 2017) ("Proceeding under a pseudonym in federal court is, by all accounts, an unusual procedure. The Federal Rules of Civil Procedure do not contemplate the anonymity of parties." (internal quotation and citation omitted)); *S.E.S. v. Galena Unified Sch. Dist. No. 499*, No. 18-2042-DDC, 2018 WL 3389878, at *1 (D. Kan. July 12, 2018) ("Allowing an adult party to proceed under a pseudonym in federal court is, by all accounts, an unusual procedure.").

3.  Rule 5.2(a)(3) does permit the identification of minor parties, such as A.M., by their initials.

4.  *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006); *USD No. 237, Smith Ctr. Sch. Dist.*, 2017 WL 3839416, at *11.

5.  *Femedeer*, 227 F.3d at 1246.

6.  *Id.*

7.  *Id.*

8.  *Id.*

9.  *Id.* (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)).

10.  *Zavaras*, 139 F.3d at 803.

11.  *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 411 (10th Cir. 2005). *See also Galena Unified Sch. Dist. No. 499*, 2018 WL 3389878, at *3 (holding the adult plaintiff had demonstrated exceptional circumstances in which the need for anonymity outweighed the public interest in having access to the identity of the minor plaintiff's parents).

12.  ECF No. 4 at 4.

13.  *Galena Unified Sch. Dist. No. 499*, 2018 WL 3389878, at *2.

14.  *Id.*

15.  *See, e.g.*, *S.S. v. Napolitano*, No. 18-2491, 2019 WL 316747, *at *2 (D. Kan. Jan. 24, 2019); *M.T. v. Olathe Pub. Sch. USD 233*, No. 17-2710, 2018 WL 806210, at *2 (D. Kan. Feb. 9, 2018); *USD No. 237, Smith Ctr. Sch. Dist.*, 2017 WL 3839416, at *10; *J.B. v. Liberal Sch. Dist.*, No. 06-2359, 2006 Lexis 67622, *3-5 (D. Kan. Sept. 20, 2006).

16.  ECF No. 1 at 7.

17.  *Olathe Pub. Sch. USD 233*, 2018 WL 806210, at *3; *see also Galena Unified Sch. Dist. No. 499*, 2018 WL 3389878, at *2 ("[T]he real potential of additional psychological harm—one of the very injuries litigated against here—is sufficient to outweigh the public interest in disclosure.").

18.  *See Olathe Pub. Sch. USD 233*, 2018 WL 806210, at *3 ("The Court also finds that Defendants will not be prejudiced in their defense of the case, if Plaintiffs proceed by pseudonym. In the Complaint, Plaintiffs claim the student reported the assault to at least one teacher and a school resource officer . . . so it is highly likely the identity of the Plaintiffs is exposed."); *Smith Ctr. Sch. Dist.*, 2017 WL 3839416, at *11 (finding "defendants would not be prejudiced by Doe continuing to proceed under her pseudonym in this matter because they already know her identity").

19.  *See Liberal Sch. Dist.*, 2006 Lexis 67622, at *5 ("The court fails to see how the interests of the public are implicated, apart from generalized interests . . . . Because the court does not find that the public has a significant, specific interest in the disclosure of plaintiff's identity and does find that plaintiff has a valid interest in not having his identity linked with the highly sensitive and personal matters at issue in this lawsuit, the court concludes that plaintiff's request to proceed under a pseudonym should be allowed.").

--------

